# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

February 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

SCOTT BALDWIN, J. L. SMITH, and )
KEVIN T. BROWN, individually and )
on behalf of a class of individuals )
similarly situated, )
  )
    Plaintiffs/Appellants, )  Appeal No.
  )  01-A-01-9804-CV-00195
VS. )
  )  Davidson Circuit
PIRELLI ARMSTRONG TIRE )  No. 95C-3232
CORPORATION, UNITED RUBBER, )
CORK, LINOLEUM AND PLASTIC )
WORKERS OF AMERICA, AND )
URW LOCAL UNION 670, )
  )
    Defendants/Appellees. )

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE

FOR APPELLANTS:

Jeffrey A. Greene
John W. Barringer, Jr.
Goodlettsville, Tennessee

Robert L. Delaney
Nashville, Tennessee

FOR APPELLEE PIRELLI
ARMSTRONG TIRE CORP.:

Charles Hampton White
Richard L. Colbert
Nashville, Tennessee

FOR APPELLEE UNITED RUBBER,
CORK, LINOLEUM and PLASTIC
WORKERS OF AMERICA:

Charles R. Armstrong
Akron, Ohio   44320

FOR APPELLEE URW
LOCAL UNION 670:

George E. Barrett
Phillip A. Purcell
Nashville, Tennessee

REVERSED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

# **O P I N I O N**

When replacement workers were fired to make room for the returning union employees at the end of a strike, the replacement workers brought suit against the employer for breach of contract and retaliatory discharge, and against the local and international unions for intentional interference with their contract. The trial court granted the employer's motion to dismiss the breach of contract count, because it believed the individual contracts had been subsumed into the collective bargaining agreement, but it overruled the motion to dismiss the retaliatory discharge count. The court granted the unions' motion to dismiss, because it believed the complaint did not state a cause of action for intentional interference with an employment at will contract. We reverse the judgment of the trial court.

## I.

### a. The Facts

Since this case was decided on a motion to dismiss we take the facts from a liberal construction of the complaint, *Huckeby v. Spangler*, 521 S.W.2d 568 (Tenn. 1975), and we assume the facts in the complaint are true, *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975).

The complaint alleges that Pirelli Armstrong Tire Corporation (Pirelli) operated a manufacturing plant in Madison, Tennessee where substantially all of the hourly workers were represented by the United Rubber, Cork, Linoleum and Plastic Workers Union. The Pirelli workers were members of Local 670. In July of 1994, the workers went out on strike. Pirelli hired some replacement workers, and after declaring that the parties had "bargained to an impasse," the company terminated the strikers and began to hire "permanent" replacement workers. All the replacement

workers were hired with an express or implied promise that they would not be terminated solely to make room for the returning strikers.

In March of 1995, the union and the company entered into a new collective bargaining agreement (CBA). The company began to rehire the union members and, under pressure from the local and the national unions, to fire the replacement workers for pretextual reasons. Ultimately all of the replacement workers were fired.

### b. The Procedural History

The named plaintiffs brought an action against the company for a breach of contract and for a retaliatory discharge. The complaint sought to recover treble damages from the unions for an intentional interference with the plaintiffs' contract of employment with the company. *See* Tenn. Code Ann. § 42-50-109

The defendants jointly removed the case to the federal district court, but that court remanded the counts containing the causes of action referred to above. The defendants then filed motions to dismiss under Rule 12.02(6), Tenn. R. Civ. Proc. The trial judge overruled the company's motion to dismiss the retaliatory discharge claim but granted the motions as to the other counts.

### II.

### Retaliatory Discharge

We will deal first with the company's contention that the trial judge erred in failing to dismiss the claim for retaliatory discharge. The elements of such a cause of action are fairly simple: "An employment at will relationship; a clear declaration of public policy which imposes duties on the employee or employer; and discharge of the

employee for refusing to violate those duties." *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822 at 825 (Tenn. 1994). The *Reynolds* court cited examples of a retaliatory discharge from other jurisdictions where employees had been fired for: refusing to commit perjury; refusing to ignore a lawful subpoena; refusing to ignore a subpoena to jury duty; refusing to falsify records in product labeling; and refusing to falsely certify that products had been tested when they had not. *Id.* at 824, citing *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552 at 556 (Tenn. 1988). Our own cases have recognized a case of retaliatory discharge where an employee has been fired for making a workers' compensation claim, *Clanton v. Cain Sloan*, 677 S.W.2d 441 (Tenn. 1984), and the legislature has decreed that "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304.

In this case the complaint alleges the following facts:

As of the filing of this complaint, on information and belief, none of the permanent replacement workers hired during the strike for hourly-rate positions remain employed by PIRELLI.

On information and belief, when negotiating the new collective bargaining agreement ratified on March 27, 1995, representatives of PIRELLI, on the one hand, and the URW and URW LOCAL 670, on the other hand, discussed the issue of whether or not the jobs previously vacated by striking URW members and filled by the permanent replacement workers could be made available to URW members following the end of the strike.

In the negotiations that resulted in the new collective bargaining agreement ratified on March 27, 1995, PIRELLI and the URW and URW LOCAL 670 agreed that all striking members of the URW would be re-hired by PIRELLI, despite and with full knowledge of the fact that PIRELLI had already hired the permanent replacement workers to fill the positions previously occupied by striking members of the URW and URW LOCAL 670.

On information and belief, after the end of the strike and through the termination of the permanent workers, the URW and URW LOCAL 670 did not permit any person they knew to have been a permanent replacement worker hired by PIRELLI during the strike to

join the URW or URW LOCAL 670 in order to remain employed at PIRELLI following the end of the strike.

In addition, in count one the complaint makes the following allegations:

Tennessee is a "right to work" state, in which it is contrary to public policy for an employer either to refuse to hire or to discharge an employee simply because the employee is not a member of a labor union.

The "right to work" in Tennessee without being compelled to belong to a labor union is a clear public policy evidenced by the unambiguous statutory provision of T.C.A. § 50-1-201 (1991).

PIRELLI's termination of the permanent replacement workers who are members of the Plaintiff Class violated the "right to work" public policy of Tennessee and was for this reason wrongful.

The members of the Plaintiff Class have suffered damage as a result of their termination by PIRELLI.

The damages suffered by the members of the Plaintiff Class include but are not limited to lost wages and benefits, consequential damages and emotional distress.

In terminating the members of the Plaintiff Class, PIRELLI acted intentionally, fraudulently, maliciously and/or recklessly because PIRELLI knew that it was a violation of both Tennessee and federal law to terminate employees based on the fact the employees were not union members, but nevertheless did so alleging grounds for termination which were known to be false in an effort to cover up the real (but illegal) reason for termination. As a result, PIRELLI is liable for punitive damages.

As we read the complaint it does not state a claim for a retaliatory discharge. It does not allege that the replacement workers were fired for refusing to join the union. The complaint alleges that the union and the company agreed that the striking employees would be rehired. A necessary consequence of that agreement was that the replacement workers had to go, but the connection between that fact and union membership is not stated in the complaint.

- 5 -

We take no position on whether the right to work law, Tenn. Code Ann. § 50-1-201, creates a private right of action for its violation. The appellants state emphatically that they are not asserting a cause of action for violating the statute, but they rely on the statute as a clear statement of public policy on which to base a claim of retaliatory discharge.

## III.

## Breach of Contract

We are of the opinion that the complaint states a cause of action for breach of contract. A fair reading of the complaint reveals that the plaintiffs alleged (1) that they were hired with an express or implied promise that they would not be fired in order to make room for the returning strikers (see paragraphs 41(a) and 54 of the complaint), and (2) that the company breached that promise when it settled the strike with the union. The company's promises were more than a vague promise of "permanent" employment which creates no more than an employment at will. *See Savage v. Spur Distributing Company*, 228 S.W.2d 122 (Tenn. App. 1950).

The trial judge found, however, that the plaintiffs' contract with the company was subsumed into the collective bargaining agreement subsequently entered into by the company and the union. From a reading of the cases we find that the courts use that expression to indicate that the individual contracts were displaced by the subsequent collective bargaining agreement (CBA) or that the dispute was preempted by federal law.

### a. The Displacement Issue

The only authority cited by either the company or the union that the individual contracts with the replacement workers were displaced by the CBA is *Beals v. Kiewit Pacific Co.*, 114 F.3d 892 (9th Cir. 1997). *Beals* is a preemption case in which the Ninth Circuit held that an employee could not maintain a state action seeking to enforce an employment contract entered into when the employer and the union were operating under an existing CBA. To the extent that the separate contract was inconsistent with the CBA, "the CBA controls and any claims seeking to enforce the terms of the [separate contract] are preempted. 114 F.3d at 894.

The *Beals* court distinguished *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), in which the company allegedly entered into agreements with some of its employees while they were in managerial positions. When the employees were later downgraded to hourly positions, the company argued that "their individual employment agreements were subsumed into, or eliminated by, the collective bargaining agreement." The court rejected this argument saying:

> Thus, individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement.

482 U.S. at 396.

*Beals* distinguished *Caterpillar* because it involved "an individual employment contract negotiated for a position not covered by the CBA, at a time when the employee was not covered by the CBA. 114 F.3d at 894. That is the situation involved in this case. The appellants negotiated a contract at a time when neither they nor the company were under a CBA. Therefore, we think the contracts they negotiated were not subsumed into the subsequent CBA.

## b. Preemption

For most of the same reasons appearing in the preceding section we hold that the appellants' independent contract claims are not preempted by the National Labor Relations Act (NLRA) nor by Section 301 of the Labor Managment Relations Act (LMRA). Section 301 preempts state law claims that are based directly on rights created by a CBA or claims that are substantially dependent on an interpretation of a CBA. *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987). In *Belknap, Inc. v. Hale*, 462 U.S. 491, 498 (1983), the Supreme Court described two doctrines that determine whether state causes of action are preempted by the NLRA:

> Under the first, set out in *San Diego Building Trades Council v Garmon*, 359 US 236, 3 L Ed 2d 775, 79 S Ct 773 (1959), state regulations and causes of action are presumptively pre-empted if they concern conduct that is actually or arguably either prohibited or protected by the Act. Id., at 245, 3 L Ed 2d 775, 79 S Ct 773. The state regulation or cause or action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. Id., at 243-244, 3 L Ed 2d 775, 79 S Ct 773; *Sears, Roebuck & Co. v Carpenters*, 436 US 180, 200, 56 L Ed 2d 209, 98 S Ct 1745 (1978); *Farmer v Carpenters*, 430 US 290, 296-297, 51 L Ed 2d 338, 97 S Ct 1056 (1977). In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, *Farmer v Carpenters*, supra, at 297, 51 L Ed 2d 338, 97 S Ct 1056; *Sears Roebuck & Co. v Carpenters*, 436 US, at 200, 56 L Ed 2d 209, 98 S Ct 1745, and the risk that the State will sanction conduct that the Act protects. Id., at 205, 56 L Ed 2d 209, 98 S Ct 1745. The second pre-emption doctrine, set out in *Machinists v Wisconsin Employment Relations Comm'n*, 427 US 132, 49 L Ed 2d 396, 96 S Ct 2548 (1976), proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated, id., at 140, 49 L Ed 2d 396, 96 S Ct 2548, conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes, id., at 147-148, 49 L Ed 2d 396, 96 S Ct 2548.

In *Belknap* the court decided that facts remarkably like the facts in this case did not bring the dispute within either of the NLRA preemption doctrines.

We think *Caterpillar* answers the question of whether this controversy is preempted by Section 301 of the LMRA. Considering only the allegations in the amended complaint we see no allegations that the dispute involves rights created by a CBA, and without the CBA even being in this record we cannot see how the appellants' claims involve an interpretation of the CBA.

## IV.

### Interference with Employment Contract

The trial judge dismissed the tortious interference count because it believed the appellants' contract had been subsumed within the CBA negotiated by the union. On appeal the only argument made by the local union is that one cannot interfere with a contract to which it is a party. (Citing *Forrester v. Stockstill*, 869 S.W.2d 328 (Tenn. 1994).

As we have pointed out, however, this action is not based on the CBA negotiated by Local 670. And the intentional interference with at-will employment by a third party without privilege or justification is actionable. *Forrester* at 330; *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758 (Tenn. 1977); *Dukes v. Brotherhood of Painters*, 235 S.W.2d 7 (Tenn. 1950). The allegations in the complaint are sufficient to state a cause of action against the local union.

Although the national union argues on appeal that it is a separate entity from the local union, and that there are no specific allegations against it, the complaint does specifically refer to the "URW and URW Local 670". In paragraph 61, the complaint alleges that "The URW and URW Local 670 intended to cause Pirelli to terminate the employment of all the permanent replacement workers." The complaint goes on to allege that both defendants created pressure on Pirelli to terminate the

- 9 -

appellants (paragraph 65) and that in inducing Pirelli to terminate the appellants, both defendants acted with malice and fraudulent intent (paragraph 70).

Whether the appellants can prove any of their allegations remains to be seen, but at this stage of the litigation, the complaint states a cause of action for intentional interference with contract against both union defendants.

The judgment of the court below is reversed as indicated herein and the cause is remanded to the Circuit Court of Davidson County for further proceedings. Tax the costs on appeal one-third to the appellants and two-thirds to the appellees.

                         _____

                         BEN H. CANTRELL,
                         PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE