Henry "Kent" SUDBERRY

v.

**ROYAL & SUN ALLIANCE, et al.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Sept. 4, 2008 Session.

Oct. 3, 2008.

Application for Permission to Appeal
Dismissed by Supreme Court
Feb. 17, 2009.

David H. Dunaway, LaFollette, TN, for the Appellant.

Elizabeth Washko, Nashville, TN, for the Appellee.

## OPINION

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Employee/Appellant filed suit against Employer/Appellee after his employment

was terminated following the settlement of a workers' compensation claim. Upon remand, the trial court granted summary judgment in favor of Employer/Appellees. Employee/Appellant appeals. Finding that Employee/Appellant did not sufficiently rebut the presumption of at-will employment and that, consequently, the one-year statute of limitations codified at Tenn.Code Ann. § 28–3–104 for injuries to the person is applicable, we affirm.

This is the second appeal of this case. For purposes of this appeal, we briefly outline the relevant facts; however, a full recitation of the facts is contained in this Court's opinion in *Sudberry v. Royal & Sun Alliance*, No. M2005–00280–COA–R3–CV, 2006 WL 2091386 (Tenn.Ct.App. July 27, 2006) perm. app. denied (Tenn., Nov. 20, 2006) (*"Sudberry I"*). Appellant Henry "Kent" Sudberry began working at Nissan North America, Inc. ("Nissan") on January 31, 1983. At that time, Mr. Sudberry signed an Employment Agreement, which provided, in relevant part, that:

I understand that my employment is not for any definite term, and may be terminated at any time, without advance notice, by either myself or my employer....

\*       \*       \*

[The employee acknowledges that] [t]he terms contained herein are the entire terms of my employment agreement, that there are no other arrangements, agreements, or understandings, oral or in writing, regarding my present or future employment with NMMC or any of its subsidiaries and that any purported arrangements, agreements or understandings made in the future shall not be valid unless evidenced by a writing

signed by a properly authorized representative of my employer.

In April of 1986, Nissan distributed an employee handbook, which states, in relevant part:

This handbook is not intended as a contract. As you share your ideas and opinions with us, there will undoubtedly be a need for policy changes to best meet your needs. In order to quickly adapt to these changes we reserve the right to revise our policies and procedures in whole or in part at any time. Updates of this handbook will be issued as necessary to keep you informed.

In November 1996, Nissan distributed a revised employee handbook. The 1996 handbook reads, in relevant part, as follows:

This handbook is not intended as a contract. It will undoubtedly be changed periodically as the company attempts to adapt to ideas and opinions shared by you and your colleagues. NMMC may need to revise policies and procedures, in whole or in part, at any time, with or without notice. Updates to this book will be issued as necessary.

No other amendments to the employee handbook were made during Mr. Sudberry's tenure with Nissan.

On or about December 12, 2000, Nissan terminated Mr. Sudberry's employment for alleged violation of Mr. Sudberry's medical restrictions. More than two years after the termination of his employment, on February 26, 2003, Mr. Sudberry filed the present suit against Appellees, Royal & Sun Alliance, Investigations and Intelligence Services, Inc., Wesley Moore, M.D., Kathy Kyle, Kelly Craig, Glen Lewis, Jim Pitts, Mo Bernell, and Ronnie Hawkins.[1]

---

1. Royal & Sun Alliance was Nissan's workers' compensation carrier at the time of the suit. Dr. Moore was Nissan's physician. Investigations and Intelligence Services, Inc. was hired by Nissan to investigate Mr. Sudberry's medi-

cal claims. The remaining party-defendants were all Nissan employees at the time of the suit. We also note that, on or about December 12, 2000, Mr. Sudberry filed a separate

The specific allegations raised in the complaint were discussed in *Sudberry I*, to wit:

> This suit arose out of Mr. Sudberry's workers' compensation claim involving injuries sustained while employed by Nissan. Apparently, Nissan's workers' compensation carrier, defendant Royal & Sun Alliance ("Royal"), hired defendant Investigations and Intelligence Services, Inc. ("Investigations") to investigate Mr. Sudberry's claim. According to the complaint, the defendants, composed of Royal Investigations, various Nissan employees, and a physician, sought to have Mr. Sudberry fired for violation of company rules while knowing there were in fact no such violations. Mr. Sudberry's employer, Nissan, is not a party to this lawsuit. Plaintiff alleges defendants conspired to have Mr. Sudberry fired "in order to retaliate against [him] for [his] having filed a workers' compensation claim and in order to allow the plaintiff to be replaced by a younger employee and/or other employees who were not as vested with employment rights as [Mr. Sudberry]."
>
> According to plaintiff's complaint, the defendants' behavior amounts to "a tortious interference and/or an intentional interference with an employment relationship" between Mr. Sudberry and Nissan. In addition, plaintiff alleges the defendants placed him in a "false light," retaliated against him for filing a worker's compensation claim, and violated Tenn.Code Ann. § 47–50–109, which prohibits procurement of breach of contract.[2]
>
> While it is not entirely clear, Mr. Sudberry appears to allege alternative theories of recovery or, at least, alternative characterizations of his employment relationship with Nissan. He alleged both: (1) that he had mere expectancy of continued employment with Nissan and, alternatively, (2) that he had a contract of continued employment with Nissan. . . .

*Sudberry I*, 2006 WL 2091386 at *1–*2.

All of the Appellees filed motions to dismiss Mr. Sudberry's complaint. The Circuit Court granted Investigations & Intelligence Services' motion on April 1, 2004. On January 15, 2005, the trial court granted the motion to dismiss filed by the remaining defendants. In so doing, the trial court found that Mr. Sudberry was an at-will employee and that his injuries were personal so as to be subject to the one-year statute of limitations period codified at Tenn.Code Ann. § 28–3–104, *see also Sudberry I infra*. Because Mr. Sudberry filed his complaint more than two years after the termination of his employment (at which point his cause of action accrued), the trial court granted summary judgment in favor of the Appellees.

Mr. Sudberry appealed the dismissal of his complaint to this Court. In reaching our decision to affirm in part, reverse in

---

suit against Nissan for alleged workers' compensation retaliation, age discrimination, false light, invasion of privacy, breach of contract, outrageous conduct, and intentional infliction of emotional distress. *Sudberry v. Nissan North American, Inc.*, No. 44476 Circuit Court Rutherford County. Mr. Sudberry's case against Nissan was still ongoing at the time of this appeal.

**2.** The statute reads: "It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages."

part, and remand, this Court reasoned that:

> Tennessee Code Annotated § 28–3–104(a)(1) provides that actions for "injuries to the person" must be commenced within one year after the cause of action accrued. When the action is for "injuries to personal ... property," Tennessee Code Annotated § 28–3–105(1) provides the period is three (3) years. The parties appear to agree that the action accrued upon Mr. Sudberry's termination. The question then is whether his action is for injury to Mr. Sudberry's property or to him personally.
>
> In order to make this determination, we must look to the "gravamen" of the complaint.... For purposes of deciding which statute of limitation applies, the "gravamen" of the complaint is determined on the basis of the claimed damage.... Thus, although Mr. Sudberry has alleged various causes of action, that is not the determinative factor. The applicability of either statute of limitation at issue herein must be determined by the type of injury alleged because the legislature has defined the limitations period of Tenn.Code Ann. §§ 28–3–104 and 105 by reference to the injury sustained.

\*     \*     \*

In this case, the injury from which all other alleged damages flow is the termination of Mr. Sudberry's employment. If Mr. Sudberry had a contract for continued employment or for employment for a definite term that had not yet expired, then his injury arises by virtue of losing his contract right, which is property. If, on the other hand, Mr. Sudberry did not have a contract of continued employment, then his injury does not arise from a loss of a property or contractual interest and is a personal injury.

\*     \*     \*

Thus, in deciding whether Tennessee Code Annotated § 28–3–105 applies to a tort action where the alleged injury is loss of employment, the determinative consideration is whether the plaintiff had a contract for continued or future employment, i.e., whether the contract of employment is for a definite term or terminable at will.

We find that where the employment relationship is for a definite term, i.e. not terminable at will, then an interest in an employment contract is damaged thereby triggering the three (3) year period of Tenn.Code Ann. § 28–3–105. Otherwise, if the employment relationship is not for a definite term and/or is terminable at will then no property interest in future employment exists to be damaged thus falling under injury to the person pursuant to Tenn.Code Ann. § 28–3–104.

\*     \*     \*

Since Mr. Sudberry alleged that his contract with Nissan was one for continued employment, we find, for purposes of the motion to dismiss only, that the alleged damages caused by loss of a contract and this claim is subject to the three (3) year limitations period of Tenn.Code Ann. § 28–3–105. Dismissal of this part of plaintiff's claim is reversed. Of course, the defendants may later attempt to establish that Mr. Sudberry had no contract for continued employment, and, if they are successful, his claims would be subject to dismissal because they were not filed within the one-year statute of limitations.

To the extent that Mr. Sudberry plead alternative claims that are based upon an employment relationship of an indefinite term or terminable at will, such claims are governed by the one (1) year period of Tenn.Code Ann. § 28–3–104. Dismissal as to those claims is affirmed.

*Sudberry I*, 2006 WL 2091386 at \*2–\*5 (internal case citations and footnotes omitted).

On remand, the defendants filed motions for summary judgment, seeking dismissal of Mr. Sudberry's suit on grounds that he was an employee at-will and, consequently, that his remaining claims were subject to the one-year statute of limitations period codified at Tenn.Code Ann. § 28–3–104. The motion for summary judgment was supported by a statement of undisputed facts, affidavits, and a copy of the employment agreement signed by Mr. Sudberry, and the employment agreement (and amendment thereto). By Agreed Order of October 22, 2007, Investigations and Intelligence Services, Inc. was dismissed from the suit and is not a party to this appeal.

Following a hearing, the trial court granted the remaining Appellees' motion for summary judgment by order of March 18, 2008. Mr. Sudberry appeals and raises two issues for review as stated in his brief:

1. Did the trial court properly find that Mr. Sudberry was an employee at will so as to dismiss the Plaintiff/Appellant's cause of action by granting the Defendants' motion for summary judgment?
2. Did the trial court properly refuse to apply the three-year statute of limitations of Tenn.Code Ann. § 28–3–105 to test the validity of Mr. Sudberry's cause of action for damage to property?

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. See *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

■ Before addressing the appropriateness of summary judgment in this case, we pause to note that, because this is the second appeal of this case, we are bound by the law of the case as set out in *Sudberry I*. This doctrine is a longstanding rule of judicial practice, rather than a constitutional mandate or limit on the power of the courts. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn.1998); *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 861 (Tenn.Ct.App.2006). It is based on the commonsense recognition that issues previously litigated and

decided by a court of competent jurisdiction ordinarily need not be revisited, *Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn.Ct.App.1996), and its purposes are to promote finality and efficiency in litigation, to ensure consistent results in the same litigation, and to assure that lower courts follow appellate decisions. *State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn.2000); *Harrison v. Laursen*, 128 S.W.3d 204, 208 (Tenn.Ct.App.2003).

When the law of the case doctrine applies, the ruling of an appellate court becomes the law of the case and is binding in later trials and appeals of the same case if the facts in the second trial are substantially the same as the facts in the first trial or appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d 557, 566 (Tenn.Ct.App.2001). While the doctrine applies to issues that were actually decided by the appellate court and to issues that were necessarily decided by implication, it does not apply to dicta. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Ladd v. Honda Motor Co.*, 939 S.W.2d at 90. The doctrine does not prevent reconsideration of a previously decided issue when (1) the evidence offered on remand is substantially different from the evidence offered in the initial proceeding, (2) the prior ruling is clearly erroneous and would result in manifest injustice if allowed to stand, and (3) the prior decision is contrary to a change in the controlling law that occurred between the first and second appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Watson's Carpet & Floor Covering, Inc. v. McCormick*, 247 S.W.3d 169, 180–81 (Tenn.Ct.App.2007) perm. app. denied (Tenn. May 14, 2007).

As set out above, in *Sudberry I*, this Court found that the one-year statute of limitations applies to claims for tortious interference with an at-will (or indefinite time period) employment relationship. *Sudberry I*, 2006 WL 2091386 at *5. Mr. Sudberry invites this Court to revisit its decision in *Sudberry I*, and specifically argues that the controlling law has changed based upon our Supreme Court's ruling in *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28 (Tenn.2007). While we are familiar with the *Tigg* case, we find that Mr. Sudberry's reliance thereon is misplaced in this case. The issue to be decided in *Tigg* was whether the class action tolling rule applicable in federal court applied to the *Tigg* plaintiffs. *Id.* at 35. The *Tigg* Court only addressed the question of the applicable statute of limitations in tortious interference with contract claims briefly, and in dicta: "[c]laims for interference with contract have a statute of limitations of three years. Tenn.Code Ann. § 28–3–105(1) (2000)." *Tigg*, 232 S.W.3d at 31, fn. 1. Relying on this footnote, Mr. Sudberry asserts that the Supreme Court's decision in *Tigg* is contrary to this Court's holding in *Sudberry I*. We disagree.

In *Sudberry I*, this Court specifically recognized that, if Mr. Sudberry's "contract with Nissan was one for continued employment, we find, for purposes of the motion to dismiss only, that he alleged damages caused by loss of a contract and this claim is subject to the three (3) year limitations period of Tenn.Code Ann. § 28–3–105." *Sudberry I*, 2006 WL 2091386 at *5. In short, if Mr. Sudberry had an employment relationship with Nissan for a definite period of time (i.e., one not terminable at-will), his injuries would be to property and would be subject to the three-year statute of limitations at Tenn.Code Ann. § 28–3–105; if, however, Mr. Sudberry was an at-will employee, his injuries would be to the person and, as such, his

suit would be governed by the one-year statute of limitations at Tenn.Code Ann. § 28–3–104. This ruling does not, as Mr. Sudberry suggests, run counter to the Supreme Court's ruling in *Tigg* because the *Tigg* Court presumed the existence of a contract (to trigger the three-year statute of limitations) in that intentional interference with contract case. Consequently, we find no conflict on this point between *Tigg* and *Sudberry I*.

Mr. Sudberry also asserts that the plaintiffs in *Tigg* "were plainly employees at-will." This assertion overlooks this Court's earlier opinion in the *Pirelli* litigation. In *Baldwin v. Pirelli Armstrong Tire Corp.,* 3 S.W.3d 1 (Tenn.Ct.App.1999), perm. app. denied (Tenn. Sept. 13, 1999), this Court rejected the employer's argument that it should be dismissed because the plaintiffs were at-will employees, to wit: "[w]e are of the opinion that the complaint states a cause of action for breach of contract. The company's promises were more than a vague promise of 'permanent employment' which creates no more than an employment at will." *Baldwin,* 3 S.W.3d at 5. Because the employment contract allegedly interfered with in *Tigg* is the same as that in *Baldwin,* it was more than an at-will agreement. However, in the case at bar, Mr. Sudberry's employment with Nissan was not, as discussed in detail *infra,* for a definite time period, but was at-will.

In his brief, Mr. Sudberry further asserts that, despite the ruling in *Sudberry I,* "courts have continued to apply the three year statute [of limitations] in situations akin to the one at hand." In support of this argument, Mr. Sudberry relies upon *Wyatt v. TVA,* No. 3:05–0834, 2007 WL 101829 (M.D.Tenn. Jan. 8, 2007) and *Stratton v. Wommack,* 230 Fed.Appx. 491, 492 (6th Cir.2007). We note that, in neither of these federal cases, was the court faced with an at-will employment situation. In

*Wyatt,* the employee had a written employment agreement. In *Stratton,* the dispute involved a written memorandum of understanding that employment was to "last for five years," with an "additional two years" at plaintiff's option. Consequently, both federal cases can be distinguished from Mr. Sudberry's situation for the reasons discussed in the following section.

### At–Will Employee

■ According to the law of the case, as set out in *Sudberry I* and discussed above, the gravamen of the issue on remand was whether Mr. Sudberry's employment with Nissan was for a definite period of time or was at-will. If for a definite period of time, under *Sudberry I,* the three year statute of limitations is applicable and Mr. Sudberry's claims are not time-barred. However, if Mr. Sudberry's employment is at-will, his claims are subject to the one-year statute of limitations and, consequently, would be time-barred. On remand, the trial court granted the Appellees' motion for summary judgment, finding that Mr. Sudberry was an at-will employee with Nissan, and that he failed to file his claim within the one-year statutory limit set out at Tenn.Code Ann. § 28–3–104. We now turn to the record to review this finding.

■ The doctrine of employment-at-will is a long standing rule in this State, which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. *Harney v. Meadowbrook Nursing Center,* 784 S.W.2d 921, 922 (Tenn.1990); *Watson v. Cleveland Chair Co.,* 789 S.W.2d 538 (Tenn.1989). However, both by statute and case law in this and other states, some restrictions have been imposed upon the right of an employer to terminate an

at-will employee. In Tennessee, an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy that is evidenced by an unambiguous constitutional, statutory, or regulatory provision. *See e.g., Mason v. Seaton,* 942 S.W.2d 470 (Tenn.1997); *Conatser v. Clarksville Coca–Cola,* 920 S.W.2d 646 (Tenn.1995); *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822 (Tenn.1994); *Anderson v. Standard Register Co.,* 857 S.W.2d 555 (Tenn.1993); *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn.1992). In order to rebut this presumption of at-will employment, the party seeking to do so must come forward with admissible and relevant evidence to support a finding that the employment relationship was contractual or was for a definite period of time. As discussed below, Mr. Sudberry failed to meet this requirement on remand to the trial court.

The employment agreement that Mr. Sudberry signed on January 31, 1983, which is set out more thoroughly above, specifically states that "I understand that my employment is not for any definite term, and may be terminated at any time, without advance notice, by either myself or my employer." Furthermore, Mr. Sudberry acknowledged that the terms contained in the employment agreement constituted the entirety of his agreement with Nissan: "[the employee] acknowledge[s] that the terms contained herein are the entire terms of my employment agreement. . . ." From the record, Mr. Sudberry never executed any document that specifically purports to change the terms of the employment agreement. However, Mr. Sudberry contends that the distribution of Nissan's

employee handbook (*see supra*) changed his employment status from at-will, or at least created "a question of fact as to whether the 1983 statement signed by Sudberry [i.e., the employment agreement] became a 'dead letter' over the years."

■■■ We have reviewed the handbook and can find nothing therein that would change Mr. Sudberry's status as an at-will employee to that of a contract, or definite time period, employee. In *Whittaker v. Care–More, Inc.,* 621 S.W.2d 395, 397 (Tenn.Ct.App.1981), this Court held that, in order to be considered as an employment contract, an employee handbook must contain "guarantees or binding commitments."[3] However, even in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment. *Williams v. Maremont Corp.,* 776 S.W.2d 78, 80 (Tenn.Ct.App.1988); *accord Hooks v. Gibson,* 842 S.W.2d 625, 628 (Tenn.Ct. App.1992). In this regard, this Court has recognized that an employee handbook can become a part of an employment contract. *Smith v. Morris,* 778 S.W.2d 857, 858 (Tenn.App.1988) (citing *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn.App.1981)); *accord Davis v. Connecticut Gen. Life Ins. Co.,* 743 F.Supp. 1273, 1278 (M.D.Tenn. 1990). In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. *Smith v. Morris,* 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. *Whittaker v. Care–More, Inc.,* 621 S.W.2d at 397. As stated by one court, in order for an employee

---

**3.** In *Whittaker,* the employee handbook stated: "An employee may reasonably expect uninterrupted employment year in and year out. Any employee doing his work in a satisfactory manner and working for the good of the organization has little to fear about job security." *Id.* at 397.

handbook to be considered part of an employment contract, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." *Claiborne v. Frito–Lay, Inc.,* 718 F.Supp. 1319, 1321 (E.D.Tenn.1989).

Turning to language used by Nissan in its employee handbook, we conclude that it is even less definite than the language used by the employer in *Whittaker, see* fn. 3. The Nissan handbook states that:

> This handbook is not intended as a contract. It will undoubtedly be changed periodically as the company attempts to adapt to ideas and opinions shared by you and your colleagues. [Nissan] may need to revise policies and procedures, in whole or in part, at any time, with or without notice.

From the plain language used, it is clear that Nissan reserves the unilateral right to amend the handbook. Moreover, Nissan specifically states that the handbook "is not intended as a contract." Based upon the prevailing law in Tennessee, we cannot find that the employee handbook contains "guarantees or binding commitments" sufficient to rebut the presumption of at-will employment in this case. The case at bar is, in fact, similar to that of *Adcox v. SCT Prods.,* No. 01A01–9703–CV–00123, 1997 WL 638275 (Tenn.Ct.App. Oct. 17, 1997), wherein we stated:

> We can conceive of no clearer way for an employer to express its intent not to be bound by an employee handbook's provisions than the employer's specific statement that the handbook is not a contract or that the handbook should not be construed as a contract. Even without such a statement, however, the employer's reservation of a unilateral right to modify the provisions of its employee handbook generally would preclude the handbook from being considered part of the employment contract.... Inasmuch as the handbook at issue contained both such provisions, we conclude that the trial court properly dismissed the Employees' claims for breach of employment contract against SCT.

*Adcox,* 1997 WL 638275 at *4 (internal citations and footnote omitted).

In furtherance of his argument that the employee handbook is sufficient to create a contractual employment relationship with Nissan, Mr. Sudberry cites the following language found therein:

> This book summarizes our company philosophy and company policies that have been developed with the involvement of all levels of employees at Nissan.

Mr. Sudberry relies upon this Court's opinion in *Reed v. Alamo Rent–A–Car, Inc.,* 4 S.W.3d 677 (Tenn.Ct.App.1999) to support his contention that the language used in the employee handbook evinces Nissan's intent to be bound (as discussed above, this is one of the requirements necessary to transform the presumption of at-will employment into employment for a definite term, *see Smith v. Morris,* 778 S.W.2d at 858.). In *Reed,* the disputed document was not an employee handbook *per se;* rather, it was a document entitled "My Personal Alamo Family Member Pact." In determining that this Alamo document constituted an employment contract between Reed and Alamo, the Court focused on this language:

> NOW, THEREFORE Alamo and I agree to my employment with the company, all on the terms and conditions set forth in the FamPact document:
>
> 1. FAMPACT ("Fampact") means Family Member Pact. It is my personal agreement of employment with Alamo.
>
> \*　\*　\*

Alamo has written this FamPact and promises and agrees to:

—abide by all its terms and conditions;

\* \* \*

Alamo and I acknowledge and understand the special relationship created between us by this FamPact. It is our entire agreement of employment. Alamo's employing me under the terms and conditions of this FamPact, and my working under its terms and conditions, support this agreement.

*Reed v. Alamo Rent–A–Car,* 4 S.W.3d at 687.

No such binding language is contained in the employee handbook distributed by Nissan in this case. While the Alamo FamPact clearly indicated Alamo's intent to be bound by its terms, and specifically stated that the FamPact contains the entire agreement between the parties, the Nissan handbook contains neither contractual language from which to conclude that Nissan intends to be bound by the handbook, nor does the handbook contain language sufficient to conclude that it constitutes a binding agreement between the parties for definite employment.

Mr. Sudberry's assertion that the statement in Nissan's handbook concerning the company's objective of a "long commitment from all employees" rebuts the presumption of at-will employment must also fail. Tennessee has long recognized that statements by an employer about the prospect of long-term employment are not contractually binding, nor do same alter the at-will employment presumption. *See, e.g., Price v. Mercury Supply Co.,* 682 S.W.2d 924, 934 (Tenn.Ct.App.1984) ("Our courts have long held that an oral contract for life time employment or permanent employment amounts to an indefinite hiring terminable at the will of either party where the employee furnishes no consideration other than the services required in the agreement."); *Combs v. Standard Oil Co.,*

166 Tenn. 88, 59 S.W.2d 525, 526 (1933) ("A contract of employment for an indefinite term may, in the United States, be terminated at the will of either party. A contract for permanent employment where the consideration is paid wholly or partly in advance, as by the relinquishment of a claim for personal injuries, or which is supported by a consideration other than the promise to render services, is not such an indefinite contract as to come within the rule. But a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party").

■■■■■ Likewise, we find Mr. Sudberry's argument that the employee handbook's provisions for: (1) a "probationary 'introductory' period" for new employees, (2) "available vacation time to increase[ ] with an employee's tenure," (3) "pensions and like benefits [to] vest during the employment," and (4) a " 'progressive system' of employee discipline" constitute "an employment relationship for a definite, unspecified term once the probationary period has been met" to be unpersuasive. Tennessee Courts have long recognized that references to a progressive, or seniority, system in an employee handbook do not effect the at-will employment relationship. Rather, such language indicates "that the handbook simply constitutes[s] a set of guidelines or a source of information for an employee." *Claiborne v. Frito-Lay,* 718 F.Supp. at 1321. Furthermore, the fact that Nissan's distribution of the employee handbook was accompanied by a letter from Nissan's then president and CEO, Jerry L. Benefield, stating that "[w]e are committed to applying the policies of this handbook without regard to

age, sex, race, religion, national origin or disability" does not promise employment for a specific term, and does not constitute the type of binding and unequivocal language required, under Tennessee law, to rebut the presumption of at-will employment. Moreover, Mr. Sudberry's argument that Nissan owed him a duty of good faith and fair dealing, which it allegedly "failed to discharge," is misplaced. Even if we assume, *arguendo*, that Tennessee recognizes that the duty of good faith and fair dealing is applicable to employment at-will situations, *see Goot v. Metro. Gov't of Nashville*, No. M2003–02013–COA–R3–CV, 2005 WL 3031638 (Tenn.Ct.App. Nov. 9, 2005), as correctly noted by Mr. Sudberry in his brief, this principle applies only to "contracting parties." At any rate, the covenant of good faith and fair dealing does not, *ipso facto*, negate the at-will employment relationship. *Goot*, 2005 WL 3031638 at *26 ("the implied duty of good faith and fair dealing cannot modify the employment at-will doctrine"). In short, "an employer does not breach its implied duty of good faith and fair dealing when it discharges an at-will employee for any reason." *Id.* As discussed in *Sudberry I*, whether characterized as a claim for procurement of breach of contract, or breach of the duty of good faith and fair dealing, the injury alleged by Mr. Sudberry arises from his at-will employment relationship and, consequently, should be characterized as an "injury to the person." As such, the one year statute of limitations is applicable to Mr. Sudberry's claims, and the trial court was correct in its ruling.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Henry "Kent" Sudberry and his surety.