# NOS. 12-14-00081-CR
# 12-14-00082-CR

# IN THE COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHRISTOPHER DAVID SWOFFORD,* <br> *APPELLANT* | § | *APPEALS FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Christopher David Swofford appeals his convictions for aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. In fifteen issues, Appellant argues that the evidence regarding venue is insufficient, the trial court admitted inadmissible evidence, and the written judgments contain error. We modify and affirm as modified.

## BACKGROUND

Appellant was charged by indictment with aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. He pleaded "not guilty" to the offenses, and the matter proceeded to a bench trial.

At trial, the evidence showed that Appellant's wife, Sasha, sought medical attention in May 2012, alleging that Appellant raped her with his fist. At that time, Sasha told the police that she did not wish to pursue charges. Two days later, she fled to Oklahoma with their children, six-year-old M.S. and five-year-old K.S. There, Sasha contacted Oklahoma law enforcement and gave a statement about the incident. She further alleged that the children had been sexually abused.

After an investigation, both Sasha and Appellant were charged with offenses. A jury convicted Sasha of two offenses and assessed her punishment at imprisonment for twelve years and two years respectively. In Appellant's case, the trial court found him "guilty" of the charges and assessed his punishment at imprisonment for twelve years for aggravated sexual assault, twelve years for indecency with a child by contact, and ten years for indecency with a child by exposure. This appeal followed.

## SUFFICIENCY OF EVIDENCE

In Appellant's first issue, he argues that the evidence is insufficient to prove the offenses occurred in Henderson County. To support his argument, Appellant observes that his plea was taken at the end of the first day of trial after witness testimony had begun. The testimony that was given before the plea included evidence of venue, namely that the offenses occurred in Henderson County, Texas. After it came to the trial court's attention that a plea had not yet been taken at trial, the attorneys for both sides agreed to the trial court's taking Appellant's pleas after the evidence commenced.

Appellant now argues that the testimony presented before the plea was not in evidence because there was not yet an issue between him and the State. He contends that in order for that testimony to be considered, it had to be reoffered or stipulated to by the parties. Consequently, his argument continues, the evidence is insufficient to prove that he committed the offenses in Henderson County because no evidence to that effect was presented after the plea.

We need not address the substance of Appellant's argument because his premise is incorrect. There are at least four instances where the evidence presented after the plea shows that the offenses occurred in Brownsboro, Texas—which is in Henderson County—and at least one where it specifically shows that they occurred in Henderson County. Thus, Appellant's argument is without merit. We overrule his first issue.

## ADMISSIBILITY OF CHILDREN'S STATEMENTS TO SANE

In Appellant's second, third, fourth, and fifth issues, he argues that the statements the children made to the sexual assault nurse examiner (SANE) are inadmissible hearsay evidence.

2

## Standard of Review and Applicable Law

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See **Martin v. State***, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. ***Willover v. State***, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See **Burden v. State***, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

Hearsay is generally not admissible. *See* TEX. R. EVID. 802. Once an opponent of hearsay objects, it becomes the burden of the proponent to establish that an exception makes the hearsay admissible. ***Taylor v. State***, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). One such exception is for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX. R. EVID. 803(4). To establish this exception, the proponent of the evidence must show that the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment, and that proper diagnosis or treatment depended upon the veracity of the statements. ***Taylor***, 268 S.W.3d at 588-89. The proponent must also show that the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant. ***Id.*** at 591.

Statements admissible under Rule 803(4) are not limited to those related to diagnosis and treatment of physical ailments, but may also include those related to emotional and psychological injuries, such as those that accompany crimes against children. ***Id.*** at 588. Statements identifying the perpetrator of the abuse might be pertinent to such diagnosis and treatment, particularly when the perpetrator is a household or family member and it is important to remove the child from the abusive environment. ***Id.*** at 591.

## Analysis

After Sasha reported that the children had been sexually abused, the police referred them to Susan Hinson, a sexual assault nurse examiner. At trial, Hinson testified that she takes an oral history as a part of every sexual assault examination. She stated that the history is important for

medical diagnosis and treatment. Hinson said that the scope of the examination could include the psychological aspect of the incident and how the child and family are affected.

Appellant objected to Hinson's testimony regarding the statements taken during M.S.'s and K.S.'s oral histories, and her reports containing those statements, as hearsay. The State argued that it had established an exception under Rule 803(4). Appellant argued that the exception does not apply because the examination was performed at the county help center rather than at a hospital or clinic, and it was done at the direction of law enforcement for testimonial purposes. The trial court overruled the objections and admitted the evidence.

On appeal, Appellant argues that M.S.'s statements to Hinson are not admissible under Rule 803(4) because the record does not establish that M.S. was aware that the statements were made for the purpose of medical diagnosis or treatment. He further argues that the record does not establish M.S. understood that a proper diagnosis depended on the veracity of her statements. To support his complaint, Appellant relies on *Taylor v. State*.

In *Taylor*, the court of criminal appeals addressed whether a child complainant's statements to a professional counselor were admissible under Rule 803(4) in a sexual assault trial. *Id*. The court held that the Rule 803(4) exception is not limited to statements made to a "medical professional," but could also apply to statements made to a mental health professional. *Id.* at 587-88. In the mental health context, the court held that "it is incumbent upon the proponent of the hearsay exception to make the record reflect both 1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and 2) that it is readily apparent that the child-declarant was aware that this was the case." *Id.* at 590. However, in the medical care context, the court observed that "it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Id.* at 589. Thus, the court recognized "the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.*

The court of criminal appeals has not required the proponent of statements to a sexual assault nurse examiner to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity, and we decline to do so in this case. We have

4

reviewed the record and found no evidence negating M.S.'s awareness. *See id.* at 589. Furthermore, although no affirmative showing was required, evidence in the record supports an inference that M.S. had the required awareness. Hinson testified as follows:

PROSECUTOR: What was the first thing you did with [M.S.'s] history or [M.S.'s] exam?

HINSON: With [M.S.'s] exam, I brought her into a small room, if you will, not an exam room, but a play room. We sit and color. We talk about school, things they like, things they don't like, their favorite food, just to put the child at ease and to relax a little bit, get comfortable so they are comfortable with me.
I explain to them what is involved and that I'm not there to hurt them in any way, that there is [sic] no shots, I don't give shots, so they are at ease with that. Then I start by, in the cases of children usually about the age of ten and under, I ask them has anybody hurt them, has anybody made them feel bad, or have they had to do anything that makes them feel uncomfortable. I also ask them in the beginning if they know the difference between the truth and a lie at that age.

PROSECUTOR: Did you do that with [M.S.]?

HINSON: I did.

. . . .

PROSECUTOR: Then did you ask her—what was the question, the lead-in question to the reason she was there? What was that lead-in question?

HINSON: I can't recall the specific question for her. I usually say that I am there to make sure that they are healthy and have they been hurt in any way, have they been made uncomfortable, is there anything that they are scared about, that they need to talk about. And then I'm going to check their private parts to make sure everything looks healthy.

. . . .

PROSECUTOR: And was anyone but you and [M.S.] in the room?

HINSON: No.

PROSECUTOR: All right. And did you ask [M.S.], not in so many words, but why she was there today?

HINSON: I did.

PROSECUTOR: And what was her response?

HINSON: This is what she said in her words: My daddy made me suck his private part to make it bigger. My mommy used to do that.

The trial court could have reasonably inferred from the record that M.S. was aware her statements were made for the purpose of medical diagnosis or treatment, and she understood that a proper diagnosis depended on the veracity of her statements. *See **Beheler v. State**,* 3 S.W.3d

5

182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd) (evidence sufficient to support finding seven-year-old child understood need for veracity in sexual assault examination where process was explained and child was interviewed alone, appeared calm and quiet, and knew why she was there). Accordingly, we overrule Appellant's second, third, fourth, and fifth issues regarding M.S.'s statements.

Appellant argues that K.S.'s statements are not admissible under Rule 803(4) because they do not describe his medical history, his proper diagnosis or treatment did not depend upon their veracity, and they were not important to the efficacy of his treatment. During K.S.'s examination, he told Hinson that Sasha showed him inside her private part, and that M.S. and Sasha put their mouths on Appellant's private part. While such events might not cause physical injury to K.S., they could certainly cause psychological trauma resulting in a need for treatment. Therefore, K.S.'s statements were properly admitted under Rule 803(4). *See Taylor*, 268 S.W.3d at 588. Accordingly, we overrule Appellant's second, third, fourth, and fifth issues regarding K.S.'s statements.

## ADMISSIBILITY OF VIDEO RECORDINGS

In Appellant's sixth through fourteenth issues, he argues that thirty-four of the thirty-five video clips on three DVDs were improperly admitted because they are not relevant, their probative value is outweighed by their prejudicial effect, and they constitute improper character conformity evidence.

### Standard of Review and Applicable Law

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

Relevant evidence is generally admissible, whereas evidence that is not relevant is not admissible. TEX. R. EVID. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Relevant evidence may support an elemental fact or an evidentiary fact that inferentially leads to an elemental fact. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).

Even if it is relevant, "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Evidence of other crimes, wrongs, or acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This list is illustrative, not exhaustive. *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007).

Relevant evidence may also be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. In a Rule 403 analysis, a court must balance the probative force of the evidence and the proponent's need for the evidence against any tendency the evidence has to suggest a decision on an improper basis or to confuse or distract the trier of fact from the main issues. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). A court should also consider the amount of time needed to develop the evidence, whether the trier of fact is adequately equipped to evaluate the evidence, and whether the evidence merely repeats evidence already admitted. *Id.* at 641-42. A trial court is given very substantial discretion in balancing probative value and unfair prejudice. *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). There is a presumption that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

As a threshold issue, challenges to the propriety of court rulings must be preserved for appeal. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in waiver or forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341-42 (Tex. Crim. App. 2004). A complaint is timely if it is made as soon as the ground of objection becomes apparent. *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). An issue on appeal must comport with the objection made at trial; i.e., an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Rezac v. State*, 782 S.W.2d 869, 870

(Tex. Crim. App. 1990). Thus, when an appellant's trial objection does not comport with his argument on appeal, he has forfeited his right to raise the issue. *See Clark*, 365 S.W.3d at 339; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996).

Once a trial court has ruled that evidence is relevant, the opponent of the evidence must make a separate objection to raise unfair prejudice under Rule 403 to preserve such error. *Bell v. State*, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996). Likewise, a separate objection must be made to preserve error under Rule 404. *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993).

## Sasha's Testimony

At trial, Sasha testified that in February 2012, while she and Appellant were high on methamphetamine, Appellant told her that she was either going to help him "do things" to M.S. or he was going to tie her up on the floor and make her watch. Appellant called the children into the room, told them that they were going to play a game, and described what they were going to do. First, Sasha put her mouth on Appellant's penis. Then, M.S. put Appellant's penis in her mouth for a couple of seconds. Next, Appellant wanted Sasha to put her mouth on K.S.'s penis, but she did not do it.

Sasha said later that night, Appellant pushed her onto the floor and pushed K.S.'s genitals into her face. Still later that night, Sasha came out of the bathroom to find Appellant and M.S. lying on the bed. M.S. was asleep with her head on Appellant's leg. Appellant tried to get Sasha to hold M.S.'s mouth open so he could put his penis in it. Sasha refused and took M.S. to another room. When she picked up M.S., she noticed that Appellant's hand was in her panties.

Sasha further testified that she and Appellant had engaged in some unusual sexual practices. She consented to some of these practices, but eventually Appellant began doing things without her consent. These things included choking her with a choke chain, burning her with cigarettes, and putting clamps on her breasts. Sasha said that Appellant videotaped these acts. After she left Appellant, she "burned" three DVDs containing videos of these and other acts from their laptop computer and gave them to the police.

## Admission of the DVDs

The State offered the DVDs as evidence. Appellant objected to the admission of any portion of the DVDs under Rules 401, 402, 403, and 404(b). On voir dire examination by the State, Sasha stated that the videos contain statements about sexually assaulting K.S. and Sasha's

eight-year-old daughter, V.B. She said there were also statements that "you enjoyed giving me head in front of the kids, didn't you" and "you finally had the balls to do it once you had the need." The State argued that the DVDs are relevant as party admissions; to show plan, intent, and preparation; and to corroborate the testimony of Sasha, whose credibility Appellant's counsel expressly intended to impeach. The trial court overruled the objections.

Before publishing the DVDs, the State noted that they were quite lengthy, and it had therefore set up the videos in such a way that only the pertinent parts could be published to the trial court. Appellant, however, requested that the trial court view the entirety of the videos to show the context of the "consensual sexual relationship and the fantasy life." The trial court stated that it had previously admitted only the segments of video that the State intended to publish, but it would permit Appellant to offer other segments relevant to his purposes. The trial court further stated that it was not ruling that everything on the DVDs was relevant, but it would allow the entirety of the videos to play because Appellant invoked the rule of optional completeness. The DVDs were published in their entirety.

**Content of the DVDs**

The DVDs contain 35 video clips, the vast majority of which show Sasha performing oral sex on Appellant. Many show Appellant bullying, degrading, and dehumanizing Sasha. Some show Appellant using a choke chain on her, putting clamps on her breasts, and burning her with cigarettes.

Several of the videos contain statements by Appellant about abusing the children. In one video, while Sasha performs oral sex on Appellant with a choke chain around her neck, he encourages her to fantasize about K.S., and about having Appellant "break and chain" V.B. In another video, Appellant tells Sasha, "You're such a shitty mom, you're giving me your firstborn, aren't you? You going to let me do all this to her too?" Sasha nods. Appellant continues, "You don't even feel bad about it. You don't feel bad that she's going to go through this. You're excited you get to have somebody to do it with . . . I got a little eight year old in there that you're giving me to raise you up a little lesbian lover and a second dog so you can be my two little bitches in heat, huh?" Sasha nods.

In the same video, Appellant says, "And hell, [K.S.'s] cock has claim to you now too, doesn't it? You wish you were doing this with him, too? Huh? Cock makes you wet?" Sasha appears to be choking and nods. Appellant continues, "Of course, you're going to say that the

only reason you were agreeing to all that was because I was choking you with the chain, huh? Or are you going to finally start just admitting to it instead of hiding behind it? I understand you feel bad and your chest hurts and you start feeling guilty. But you know what? That's a personal problem. I'm telling you, as of this past year, right now, you're not a person."

Later in the video, Appellant states, "It sucks for you that one week a month, you're limited a hole. Now if you're trying to make me happy, you'd use this hole [indicating Sasha's mouth]. Because at least for the time being, this is the one I like best. This is my favorite hole for now. Too bad for you, [V.B.] is my favorite between the two of you. And if you're a really good dog—a really, really, really good dog—you'd find some way for me to get away with having her try it out. You giving me a dirty look or are you actually trying to think of a way to get my dick in [V.B.'s] mouth?" Sasha shakes her head and then nods. Still later in the video, as Sasha continues to perform oral sex, Appellant states, "I still think that you still have too much shame and pride to drop down on your knees and do this in front of them, don't you? Huh?" Sasha appears to be choking and shakes her head. Appellant says, "Not as long as I'm choking you like that. But would you do it of your own free will? Just to get the clamps off?" Later, Appellant says, "What else do you think would be fun? . . . Besides having your daughter as your lesbian lover while we're going on through life. Or being tag teamed with what used to be your husband and son."

In another video, Sasha gags on Appellant's penis and removes it from her mouth. Appellant states, "Are you sorry that you took it out? Sorry you weren't good enough to keep it, weren't you? Should I go get another one, a different girl? Oh, is that why you're giving me [V.B]?" In another video, he tells her, "Think we done enough to make sure there's no argument when you're sober? Now this time I'm not going to be nice because I was so mean. I'm not going to let up. I'm just probably going to be meaner. . . . The only thing you could do to impress me is, I'd like to see you to make out with your baby. . . . Still want to? I'd like to see you try. I'd also like to see you try to get my dick in her mouth." He places a second set of clamps on Sasha. As Sasha writhes in pain, Appellant obtains her promise to try to make out with V.B. and get his penis in her mouth. In another video, Appellant states, "You enjoyed giving me head in front of the kids, didn't you? Not just the fact that you were giving me head, but you enjoyed the fact that it was in front of the kids. . . . Finally found the balls to do it once you had the need."

**Relevance**

In Appellant's sixth, ninth, and twelfth issues, he argues that the only relevant video clip on the three DVDs is the one in which he references Sasha's performing oral sex on him in front of the children. However, the other video portions that the State wanted to publish are relevant as well. They show the controlling relationship that Appellant had with Sasha and how he was able to manipulate her into agreeing to help him sexually abuse all three of her children. This evidence is relevant in that it makes more probable the fact that Appellant was able to manipulate Sasha, M.S.'s own mother, into helping him commit the charged offenses against M.S., as she testified. Moreover, the evidence is relevant to show that Appellant had the intent to arouse or gratify his sexual desire when he touched M.S. and exposed his genitals, which the State was required to prove. *McDonald v. State*, 148 S.W.3d 598, 600 (Tex. App.—Houston [14th Dist.] 2004) (intent to arouse or gratify sexual desire can be inferred from defendant's conduct, remarks, and all surrounding circumstances, including a common pattern of similar acts), *aff'd on other grounds*, 179 S.W.3d 571 (Tex. Crim. App. 2005). Accordingly, we overrule Appellant's sixth, ninth, and twelfth issues regarding these video portions.

**Rule 403**

In Appellant's seventh, tenth, and thirteenth issues, he argues that even if the DVDs are relevant, their probative value is outweighed by their prejudicial effect. Appellant gives no basis for this argument, and we disagree.

The video portions that the State wanted the trial court to see are highly probative for the reasons stated above. Furthermore, the State's need for evidence to corroborate Sasha's testimony was high. The State's case depended largely on the testimony and prior statements of Sasha and M.S. There was no physical evidence to support the accusations. In Appellant's counsel's opening statement, he told the trial court that Sasha's credibility would be of "central importance" in the trial and gave several reasons why the court should doubt her credibility. He also noted that Sasha had complete control of the children for nineteen days before their interviews, and he expected the evidence to show that they had been coached and manipulated.

The evidence that Appellant sadistically abused his wife and methodically instilled a fear of more and worse abuse if she failed to assist him in sexually abusing their children is highly prejudicial. But it is not unfairly so. The evidence is prejudicial for the same reasons it is probative. We conclude that the trial court did not abuse its discretion in determining that the

11

probative value of the video portions that the State wanted to show is not substantially outweighed by the danger of unfair prejudice. Accordingly, we overrule Appellant's seventh, tenth, and thirteenth issues regarding these video portions.

## Rule 404(b)

In Appellant's eighth, eleventh, and fourteenth issues, he argues that all of the video clips besides the one he concedes is relevant are inadmissible character conformity evidence under Rule 404(b). But when the trial court admitted the evidence, it stated that it did not consider it to be character evidence. Furthermore, we previously concluded that the video portions the State wanted to publish are relevant for purposes other than character conformity. We conclude that the trial court did not err by admitting those video portions. We overrule Appellant's eighth, eleventh, and fourteenth issues regarding this evidence.

## Portions of DVDs the State Did Not Intend to Publish

Regarding the remainder of the videos on the DVDs, we note that the trial court watched the entirety of the videos at Appellant's request, and it seems clear from the record that it would otherwise not have done so. Under the law of invited error, a defendant cannot take advantage of an error that he invited or caused, even if the error is fundamental. *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011).

Invited error is a form of estoppel, rather than waiver. *See id*. In other words, a defendant is estopped from seeking appellate relief based on error that he induced, and it is based on the principle that a defendant should not be allowed to take advantage of his own wrong. *Id*. Consequently, the definition of error excludes trial court actions sought by the defendant. *Ripkowski v. State*, 61 S.W.3d 378, 389 (Tex. Crim. App. 2001). Thus, when a defendant affirmatively seeks action by the trial court, he cannot later contend that the action was error. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999).

Regardless of whether Appellant requested the videos' admission under the rule of optional completeness, or whether that rule applies in this case, he requested that the trial court watch—and presumably consider as evidence—those videos. Under the law of invited error, he cannot now complain that the trial court did what he asked. Accordingly, we overrule Appellant's sixth through fourteenth issues regarding those video portions the State did not intend to publish.

12

## ERROR IN JUDGMENT

In Appellant's fifteenth issue, he asks that we correct certain errors in the trial court's judgments. He notes that although he pleaded "not guilty" to the charged offenses and was found "guilty" on November 2, 2013, the judgments indicate that he pleaded "guilty" and was found "guilty" on November 5, 2013. After reviewing the record, we conclude that the judgment should be modified to reflect that Appellant pleaded "not guilty" and was found "guilty" on November 2, 2013. *See Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (appellate court has authority to correct trial court's judgment to make record speak the truth when it has necessary data and information). Accordingly, we sustain Appellant's fifteenth issue.

## DISPOSITION

We have overruled Appellant's first fourteen issues but sustained Appellant's fifteenth issue regarding error in the judgments. Accordingly, we *modify* the trial court's judgments to reflect that Appellant pleaded "not guilty" and was found "guilty" on November 2, 2013. We *affirm* the judgments *as modified*.

**GREG NEELEY**
Justice

Opinion delivered November 12, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 12, 2015**

**NO. 12-14-00081-CR**

**CHRISTOPHER DAVID SWOFFORD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. A-19,733)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of this court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** to reflect that Appellant pleaded "not guilty" and was found "guilty" on November 2, 2013; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 12, 2015**

**NO. 12-14-00082-CR**

**CHRISTOPHER DAVID SWOFFORD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. A-19,734)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of this court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** to reflect that Appellant pleaded "not guilty" and was found "guilty" on November 2, 2013; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*